FELTENSTEIN, et al. *v.* NEWELL, et al.

No. 42945          March 23, 1964          162 So. 2d 253

*Snow, Covington, Shows & Watts,* Meridian, for appellants.

*Wilbourn, Lord & Williams,* Meridian, for appellees.

LEE, C. J.

Mrs. Rebecca Meyer Feltenstein, individually, and jointly with Arnold S. Feltenstein, as Co-Executors of the estate of Joe Sam Meyer, deceased, filed their petition in the chancery court seeking to have the sum of $250 per month, from and after October 1, 1961, until the date of the decree, determined by the court as a reasonable rent for the property therein described; for the impression of a lien against the property; and for its sale in satisfaction of such rental charges. J. Altus Newell and his wife, Mrs. Ruth T. Newell, R. G. Lord as trustee, J. H. Kerr, and Dudley Victor Skinner and wife, Lessie C. Skinner, were made defendants. The Newells answered the petition in great detail, denying their liability for the rental charge against the property. In order to do equity, they recognized that the petitioners were entitled to recover, from the sale of the personal property situated on the premises, an amount which would equal the cost to the petitioners for removing the property from their premises and paying the cost of keeping such property in dead storage. The other defendants filed disclaimers of no interest in the controversy.

The facts were stipulated by the parties and were substantially as follows: Prior to September 1, 1960, Joe Sam Meyer and Mrs. Rebecca Meyer Feltenstein, brother and sister, owned a two story building in the City of Meridian, Mississippi. The floor space was divided into sections for various rental purposes. Floor

space No. 2101 was for years rented to Dudley V. Skinner and his wife, Lessie C., who operated therein a cafe, known as the Merchants Grill. During 1960, the Skinners went out of the cafe business and subleased the premises, together with the personal property in the cafe, to James H. Kerr. The Newells had held deeds of trust on the personal property used by the Skinners in the operation of their cafe and other property. These deeds of trust were in default on December 19, 1960, and were foreclosed, the property being purchased at the foreclosure sale on December 19, 1960 by the Newells.

On December 28, 1960, the Newells sold this property to James H. Kerr for $3,500, evidenced by a promissory note providing for monthly payments, and secured by a conditional sales contract.

Defendant Kerr was, at the time, and has been since, a member of the Armed Forces of the United States Government and was on active duty. He paid the rent from time to time to Meyer and his sister. During September 1961, he advised both Joe Sam Meyer and J. Altus Newell that he was closing his cafe business on Sunday, October 1, 1961. At that time, he was in default to the Newells for the purchase price of the property and to Meyer and his sister on account of rent.

On September 29, 1961, Meyer and his sister addressed a letter to J. Altus Newell, advising him of the notice which Kerr had given about closing the cafe, and informing him that, if any of the property which he held under mortgage remained in the building on and after October 1, 1961, he would be required to pay $250 per month in advance before the property would be released.

The return receipt for this registered letter was signed "J. Altus Newell by J. H. Baker, Jr.", Baker, at the time, being a partner of Newell in oil distribution business, but Newell made no response.

Again on October 30, 1961, Meyer wrote another letter to J. Altus Newell, reminding him that the rent had not

been paid and that on November 1, two months rent would be due, and advising that, unless payment was made immediately, court proceedings would be begun. This letter was received in due course through the mails. Thereafter, there was an exchange of correspondence between the parties, but there was no personal contact until after October 30, 1961.

The personal property remained in the rented space until finally sold by order of the court. The keys to the space were first in the possession of Meyer, and, after his death on January 8, 1962, they were in the possession of the executors of his estate or their attorney. However a letter from counsel for petitioners to counsel for defendants, dated November 6, 1961, said that Kerr had advised that Newell refused to accept the keys. The space was locked, except when cleaning was undertaken by the executors. Both the Skinners and Kerr had paid a $250 monthly rental. Nothing had been paid for rent of the premises since prior to October 1, 1961. A long experienced storage man testified for the defendants that the reasonable cost of moving this property would be about $75, and for dead storage $15 per month. An experienced transfer man testified for the petitioners that the reasonable cost of moving was around $150 and storage around $20 per month.

At the conclusion of the evidence, the court sustained the motion for a decree pro confesso against J. H. Kerr, and found that all other parties defendant, except the Newells, had filed disclaimers of interest in the property. A commissioner was thereupon appointed to sell the property for the satisfaction of the outstanding liens. The sale was consummated for the sum of $1,300, which, after payment of the costs and expenses, left a balance of $1,190.24. The court, by its decree, determined that, out of the proceeds of the sale of the property, the petitioners were entitled to the sum of $250, as one month's rental from October 1, 1961, through October

31, 1961, and the sum of $112.50, as the reasonable cost of removing the property to dead storage on November 1, 1961, and the further sum of $157.50 as the reasonable cost of storing the property in dead storage from November 1, 1961, until August 15, 1962, the date of the confirmation of the sale. The aggregate of these amounts, payable to the petitioners was $520. The balance of the proceeds, after payment of the costs, was ordered to be paid to the Newells on the principal debt to them of $3,155.26 and interest at the rate of six percent per annum, owing by J. H. Kerr to the Newells.

From the decree entered, the petitioners appealed.

The appellants have assigned and argued that the court was in error (1) in declining to award them rentals up to the date of the removal of the property; and (2) in awarding any part of the proceeds from the sale of the property, after payment of the commissioner's fees, to the appellees. In asserting these alleged errors, they contend that they were entitled to reasonable compensation; that $250 per month was the long established monthly rent that had been paid for this space; and that they should have been allowed that amount for the entire time that the property occupied this space.

The appellants held a lien for rent against the personal property, left by Kerr in this space. But the appellees also held a purchase money lien against this property. Both parties were victims of this default by Kerr. There was no contract between them concerning rent. Obviously Section 899, Code of 1942, Rec., affords the remedy in such a case as this one. That section provides as follows: *"Where there is no contract,* or where the agreement is not in writing, *a landlord may maintain an action to recover a reasonable satisfaction for the use and occupation of the lands held and enjoyed by another.* And if on the trial of such action there appear in evidence any demise or agreement the plaintiff shall not on that account be nonsuited, but may make

use thereof as evidence of the amount to be recovered.'' (Emphasis ours).

While the learned chancellor made no finding of fact, as such, he evidently concluded that the notice, which the appellants endeavored to give the appellees, was sufficient to let them know that they would be expected to pay the customary rent for the month of October 1961; and, since the appellees made no response, their silence was accepted as their consent. But, from subsequent developments, the appellants were advised that the appellees would decline to pay this rent.

In Newberg & Anderson v. Cowan, 62 Miss. 570 (1885), this Court construed the above statute to fix ''upon the occupant of the land of another an obligation to pay so much as is reasonable for the use thereof, whether the owner knows of or consents to such occupancy or not. But the measure of recovery is the 'reasonable satisfaction for the land, etc., held or occupied by the defendant,' and not what the peculiar circumstances of the occupant may make the land worth to him.'' In other words, the landlord cannot recover more than the reasonable satisfaction by showing that the property was pecularly valuable to the user, nor can the user defeat a recovery by showing that, if he had not occupied it, it would have been profitless to the landlord. Where the parties cannot agree, reasonable satisfaction becomes an issue of fact. Both sides have cited other cases, but they do not appear to be of any substantial help.

While the court was justified, from the evidence in view of no action by the appellees after notice, in charging them $250 for the use of the space for October on an implied agreement, there was clearly no justification for such an implied contract in the light of subsequent developments. It then became the duty of the appellants to minimize their damage as much as they reasonably could do. In National Dairy Prod-

ucts Co. v. Jumper, 241 Miss. 339, 130 So. 2d 922, recovery was sought on account of damage to a motor vehicle, and the court held that the plaintiffs' "measure of damages for loss of use is the rental value of a substitute, unless they can show that none was available." See authorities there cited. Cf. Levy v. J. A. Olson Co., Inc., 237 Miss. 452, 115 So. 2d 296.

The proof showed that the personal property could have reasonably been moved and stored. The appellants, in an effort to mitigate the damage, should have done that.

The learned chancellor heard all of the evidence, and resolved the issue. He was supported by substantial evidence, and the decree must be affirmed.

Affirmed.

*Ethridge, Rodgers, Brady, and Patterson, JJ.,* concur.